UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


WILLIAMS                                CIVIL ACTION

VERSUS                                  NO: 12-2935

CARDINAL HEALTH 200, LLC                SECTION: "J" (2)

### ORDER AND REASONS

Before the Court are Defendant's **Motions to Dismiss under Rule 12(b)(6) (Rec. Docs. 25, 42)**, Plaintiff's oppositions to both **(Rec. Docs. 38, 45, respectively)**, and Defendant's reply **(Rec. Doc. 41)**. Defendant's first Motion to Dismiss was set for hearing on May 8, 2013. Defendant's second Motion to Dismiss is set for hearing on June 5, 2013. Because these motions are based on the same underlying facts and raise contingent arguments, they are addressed jointly in this Order and Reasons. The Court, having considered the motions and memoranda of counsel, the record, and the applicable law, finds that Defendant's motions should be **GRANTED** for the reasons set forth more fully below.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

This suit arises out of claims of race discrimination,

1

sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, and race and gender discrimination under Louisiana Revised Statute § 23:332. Plaintiff, Natasha Williams, filed her Complaint with this Court on December 12, 2012, naming Cardinal Health 200, LLC as the Defendant. Plaintiff's initial Complaint only alleged causes of action for race discrimination, sexual harassment, and retaliation under Title VII. On April 18, 2013, Plaintiff filed a First Amended Complaint which added a cause of action for race discrimination under Louisiana Revised Statute § 23:332. On April 25, 2013, Plaintiff was granted leave to file a Second Amended Complaint which added an additional cause of action for gender discrimination under the same state statute. While each complaint contains additional causes of action, all of Plaintiff's complaints are based on the following factual allegations.

Plaintiff alleges that she was employed by Defendant for several years, beginning employment on December 22, 2003, leaving briefly and returning on September 7, 2007. Plaintiff maintains that after returning, she was employed by Defendant from September 7, 2007 until September 26, 2011.

Plaintiff asserts that the events leading up to her termination began on September 14, 2011, when her husband got

2

into a fist fight with one of her co-workers. Plaintiff reports that the fight occurred during an hour-long dinner break from work at a nearby restaurant.[1] After the fight, Plaintiff returned to work and met with two supervisors to tell them that her husband had been in a fight with her co-worker. Plaintiff explained that she did not know why her husband got into the fight.[2] Plaintiff was also asked to provide her supervisors with a written statement. That same evening, the police began investigating the incident as well, going to Plaintiff's job site and asking her to provide them with a statement. Plaintiff then alleges that she was sent home on paid leave pending the investigation. On September 17, 2011, Plaintiff's supervisor allegedly informed Plaintiff that she could return to work on September 19, 2011.

Plaintiff asserts that on September 18, 2011, her husband told her that he had gotten into the fight because Plaintiff's co-worker had sent some text messages to Plaintiff's phone. Plaintiff avers that she was unaware of the messages, but explains that she reported the conversation with her husband to

---

[1] Plaintiff explains that her hours were from 2:00 p.m. to 10:00 p.m. and that she was given a one hour dinner break at 6:00 p.m. At the time of the fight, Plaintiff was getting dinner with her husband and two children.

[2] Plaintiff's co-worker was brought to the hospital after the fight and was not available to speak to management for several days following the incident.

her supervisors when she returned to work on September 19, 2011. Plaintiff asserts that she was fired the following week on September 26, 2011. Plaintiff contends that her co-worker was involved in "some type of inappropriate behavior" toward her.[3] She alleges that she was terminated as a result of race or gender discrimination and/or in retaliation "for having participated in an investigation of workplace sexual harassment."[4]

Defendant filed its first Motion to Dismiss (Rec. Doc. 25) on April 17, 2013. After Defendant filed its motion, Plaintiff filed two amended complaints. Plaintiff filed her opposition to Defendant's motion on May 2, 2013. Defendant filed a reply on May 8, 2013. In response to the two amended complaints, Defendant filed an additional Motion to Dismiss (Rec. Doc. 42) on May 10, 2013. Plaintiff responded in opposition on May 28, 2013.

### THE PARTIES' ARGUMENTS

In Defendant's first Motion to Dismiss, it argues that the Court should dismiss this matter because Plaintiff has failed to exhaust her administrative remedies. Specifically, Defendant asserts that Plaintiff failed to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") or the

---

[3] Compl., Rec. Doc. 1, p. 6 ¶ 19.

[4] Compl., Rec. Doc. 1, p. 7 ¶ 22.

Louisiana Commission on Human Rights ("LCHR") within 300 days of her termination. Defendant's motion specifically refers to Plaintiff's claims of race discrimination, retaliation, and sexual harassment under Title VII. In support of its argument, Defendant sets out the following facts concerning Plaintiff's EEOC charge.

Defendant contends that Plaintiff was terminated on September 26, 2011, meaning that she needed to file a charge of discrimination by July 22, 2012. Defendant asserts that on July 11, 2012, Plaintiff's attorney filed an unverified Intake Questionnaire with the EEOC on Plaintiff's behalf. Defendant reports that the questionnaire did not specifically state that Plaintiff wanted to file a charge of discrimination with the EEOC. In fact, Defendant notes that Plaintiff did not check the box on the Intake Questionnaire which stated "I want to file a charge or discrimination . . . .", or the box which said "I want to talk to an EEOC employee before deciding whether to file a charge."[5] Defendant further contends that on July 17, 2012, Plaintiff was sent a letter which informed her that the EEOC needed more information in order to determine how to proceed. Defendant explains that the letter stated that "IF [the EEOC had

_____

[5] Ex. 1 to Def.'s 1st Mot. to Dismiss, Rec. Doc. 25-1, p. 13.

not] HEARD FROM [Plaintiff] WITHIN 30 DAYS OF THIS LETTER [they would] ASSUME THAT [she] DID NOT INTEND TO FILE A CHARGE OF DISCRIMINATION WITH [them]."[6] Defendant asserts that Plaintiff did not respond to the letter within thirty-days (i.e., by August 16, 2012); however, Defendant explains that on September 27, 2012, after the 300 day period had expired, Plaintiff's counsel sent a fax to the EEOC requesting a Right to Sue Letter. Defendant reports that the EEOC received the request on October 1, 2012, and issued a Notice of Discrimination ("the Notice") to Defendant that same date. Defendant avers that the Notice did not contain any details about Plaintiff's allegations. Defendant also asserts that the Notice did not include a copy of Plaintiff's Intake Questionnaire. The Notice states that "[a] perfected charge (EEOC Form 5) will be mailed to you once it has been received from the Charging Party."[7]

Under these facts, Defendant argues that it is clear that Plaintiff did not timely file a charge of discrimination. Specifically, Defendant asserts that (1) Plaintiff never filed a charge of discrimination, and that (2) Plaintiff's Intake Questionnaire cannot be construed as a timely filed charge. With

---

[6] Ex. 1 to Def.'s 1st Mot. to Dismiss, Rec. Doc. 25-1, p. 9 (emphasis in original).

[7] Ex. 1 to Def.'s 1 st Mot. to Dismiss, Rec. Doc. 25-1, p. 17.

regard to Plaintiff's Intake Questionnaire, Defendant asserts that it cannot be construed as a charge of discrimination because (1) it is not verified, (2) it did not cause the EEOC to take administrative action, and (3) the contents of the questionnaire were never sent to Defendant. Furthermore, Defendant argues that the Court should not liberally construe Plaintiff's submissions to the EEOC because she was represented by an attorney throughout the entire EEOC filing process.

In response, Plaintiff does not contest the facts as set forth by the Defendant; however, Plaintiff claims that the Intake Questionnaire constituted a charge of discrimination. In particular, Plaintiff argues that Defendant has had actual notice of Plaintiff's discrimination allegations since the date of her termination. Plaintiff avers that since that date, Plaintiff and Defendant have been in an ongoing dispute about a separately filed application for unemployment benefits that was denied. Because of that dispute, Plaintiff explains that "Plaintiff's counsel has been in continuous and uninterrupted contact with the [Defendant]."[8] Plaintiff further notes that on June 7, 2012, Plaintiff's counsel sent Defendant's counsel a letter outlining the allegations of sexual harassment and noting that the deadline

---

[8] Pl.'s Opp. to Def.'s 1st Mot. to Dismiss, Rec. Doc. 38, p. 2.

7

to file an EEOC charge was July 21, 2012. This letter included an offer of settlement.[9]

With regard to Plaintiff's arguments about the Intake Questionnaire, Plaintiff asserts that the questionnaire contained all of the information that is required for a charge of discrimination, namely the plaintiff's name, mailing address, race, the defendant's name and contact information, plaintiff's hire and discharge date, plaintiff's rate of pay, and a brief description of the events. Plaintiff relies on Price v. Southwestern Bell Telephone Co., 687 F.2d 74 (5th Cir. 1982), arguing that in Price, the United States Court of Appeals for the Fifth Circuit held that an intake questionnaire can constitute a charge of discrimination and that "the crucial element of a charge of discrimination is the factual statement contained therein."[10] Thus, Plaintiff contends that the Intake Questionnaire that was submitted on Plaintiff's behalf on July 11, 2012, fulfilled all of the necessary requirements in this circuit. Likewise, Plaintiff asserts that as a result of the Intake Questionnaire, the EEOC did initiate administrative

---

[9] Ex. 1 to Pl.'s Opp. to Def.'s 1 st Mot. to Dismiss, Rec. Doc. 38-1, pp. 2-3. The letter states that "[t]he deadline to file a charge with the [EEOC] is July 21, 2012. Rather than get into protracted litigation, my client is willing to settle all claims on the following terms."

[10] Pl.'s Opp. to Def.'s 1st Mot. to Dismiss, Rec. Doc. 38, p. 5.

proceedings. Specifically, Plaintiff points to the Notice that the EEOC sent to Defendant on October 23, 2012. Plaintiff further contends that any requirement that the Intake Questionnaire or charge of discrimination be signed under oath by Plaintiff is waivable.

In Defendant's second Motion to Dismiss, it specifically seeks dismissal of all of Plaintiff's claims under Louisiana Revised Statute § 23:332. Defendant contends that Plaintiff's state law claims should be dismissed with prejudice because they are prescribed. Defendant asserts that the prescriptive period for claims under Louisiana Revised Statute § 23:332 is one year. Defendant notes that Plaintiff was terminated on September 26, 2011, and brought the instant action on December 12, 2012, one year, two months, and sixteen days after her termination. Thus, Defendant argues that Plaintiff's state law claims have prescribed. Defendant further notes that the date that this suit was instituted was not the actual day that the state law claims were raised. Rather, Plaintiff did not raise her state law claims until April 18, 2013, making them one year, five months, and twenty-two days overdue.

Furthermore, Defendant also notes that while the one-year prescriptive period may be extended by six months during the

pendency of an administrative hearing, even if this Court were to find that the EEOC has instituted an administrative hearing (which Defendant denies), Plaintiff's claims would still be prescribed. Defendant explains that if an administrative hearing was pending, it was only pending from July 11, 2012 until October 25, 2012, the day that the EEOC issued the right to sue letter. Thus, Defendant contends that Plaintiff would only be entitled to a three month and fourteen day extension of the prescriptive period. As such, Defendant contends that Plaintiff would have had to filed her state law claims by January 9, 2013. Thus, Defendant asserts that because Plaintiff's state law claims were filed on April 18, 2013, they were untimely. Plaintiff argues that under Federal Rule of Civil Procedure 15(c), Plaintiff's state law claims cannot be found to relate back to the date of her original complaint.

In response, Plaintiff argues that his state law claims are not prescribed. Plaintiff contends that an administrative hearing was pending in her case from July 11, 2012, the date that her counsel filed the Intake Questionnaire on her behalf, until October 25, 2012, the date the EEOC issued the Right to Sue letter, thereby tolling her state law claims. As such, Plaintiff asserts that she had until January 9, 2013 to file suit.

10

Plaintiff notes that she filed suit on December 12, 2012, making her suit timely. Furthermore, Plaintiff notes that her state law claims, although brought after the case was initially filed necessarily "relate back" to the original claim because they arise out of the same transaction and occurrence. Thus, Plaintiff argues that the December 12, 2012, filing date is the correct date for prescription purposes and, consequently, that she timely filed her complaint. Plaintiff further reiterates that Defendant has had actual notice of these claims since her termination and/or the June 7, 2012, letter.

## DISCUSSION

### A.   Legal Standard

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 346 (2005).  The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678

(2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. <u>Lormand v. U.S. Unwired, Inc.</u>, 565 F.3d 228, 232-33 (5th Cir. 2009); <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996).  The court is not, however, bound to accept as true legal conclusions couched as factual allegations. <u>Iqbal</u>, 556 U.S. at 678.

**B.   Charge of Discrimination**

In an employment discrimination case, the plaintiff must exhaust all administrative remedies before pursuing her claims in federal court.  <u>Taylor v. Books A Million, Inc.</u>, 296 F.3d 376, 379 (5th Cir. 2002) (citing <u>Dao v. Auchan Hypermarket</u>, 96 F.3d 787, 789 (5th Cir. 1996)).  The plaintiff exhausts her administrative remedies when she files a timely charge of discrimination with the EEOC. <u>Dao</u>, 96 F.3d at 788-89 (noting that although filing a claim with the EEOC is not a jurisdictional prerequisite, it "'is a precondition to filing suit in district court'" (quoting <u>Cruce v. Brazosport Indep. Sch. Dist.</u>, 703 F.2d 862, 863 (5th Cir. 1983))). As a general rule, discrimination

victims must file a charge with the EEOC within 180 days of when the unlawful employment practice occured. 42 U.S.C. § 2000e-5(e)(1). In deferral states, such as Louisiana, an exception to this general rule applies and an individual must file a charge within 300 days of the allegedly discriminatory act.[11] The limitations period for filing a charge of discrimination with the EEOC starts to run from the date the discriminatory act occurs or the date that the plaintiff knows or reasonably should know of the discriminatory act. Delaware State College v. Ricks, 449 U.S. 250, 258 (1980); Merrill v. S. Methodist Univ., 806 F.2d 600, 605 (5th Cir. 1986).

A charge of discrimination must be filed "in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e-5(b). The EEOC's regulations also require that a charge be in writing, signed, and verified. 29 C.F.R. §§ 1601.9, 1601.3(a). This requirement is designed to protect employers from the filing of frivolous claims. Price, 687 F.2d at 77. In addition, to be sufficient a charge "should contain . . . [t]he full name and

---

[11] 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d); 29 U.S.C. § 633(b). This exception occurs where the state in which the alleged discrimination occurs "has a law prohibiting discrimination in employment." 29 U.S.C. § 633(b). Neither party to this suit disputes that this 300-day exception applies to the instant case.

address of the person against whom the charge is made" and "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." Id. § 1601.12(a). A sufficient charge will "identify the parties, and [] describe generally the [complained of] action or practices." Id. § 1601.12(b). In general, employment charges are construed "with the 'utmost liberality'" because they are often prepared by laymen. Price, 687 F.2d at 77 (quoting Terell v. United States Pipe & Foundrey Co., 644 F.2d 1112 (5 th Cir. 1981)). However, some courts have found that "'[t]he leniency accorded a layman in drafting the EEOC charge should not be extended to an attorney.'" Fassbender v. Treasure Chest Casino, No. 07-5265, 2008 WL 170071, at *6 (E.D. La. Jan. 16, 2008) (quoting Cannon v. St. Paul Fire & Marine Ins. Co., No. 03-2911, 2005 WL 1107372, at *1n.1 (N.D. Tex. May 5, 2005)).

In the instant case, the parties agree that the discriminatory act occurred on September 26, 2011, the date that Plaintiff was terminated. Thus, in order to timely file a charge of discrimination, Plaintiff must have filed the charge by July 22, 2013. Relying on Price v. Southwestern Bell Telephone Co., Plaintiff argues that her Intake Questionnaire constituted a charge of discrimination properly filed with the EEOC and,

therefore, she contends that she has exhausted her administrative remedies. The Court disagrees.

In _Price_, the Fifth Circuit considered whether a pro se plaintiff's unverified EEOC intake questionnaire could constitute a charge of discrimination for the purposes of satisfying the time limitation for filing a charge. 687 F.2d at 75 -79. In that case, on January 10, 1979, within 180 days of her termination, plaintiff met with an EEOC Specialist to discuss her alleged discrimination. _Id._ at 75. During the meeting, the EEOC Specialist recorded the factual basis of plaintiff's complaint on an EEOC Form 283. _Id._ Subsequently, on January 12, 1979, the EEOC wrote plaintiff's employer and advised it that plaintiff had filed a charge of discrimination with the EEOC. _Id._ The letter to plaintiff's employer also included an official Notice of Charge. _Id._ After plaintiff's initial meeting with the EEOC, she corresponded with the EEOC at least four additional times. _Id._ On March 12, 1979, the EEOC Specialist mailed plaintiff a draft of a proposed amended charge, requesting that plaintiff sign and return the charge in thirty days. _Id._ Rather than sign the charge, plaintiff sent the EEOC Specialist a 110-page description of the discriminatory incidents. _Id._ On July 31, 1979, the EEOC sent plaintiff a Notice of Right to Sue letter. _Id._ Thereafter,

15

plaintiff instituted her suit. Id. Upon filing her suit, the defendant moved to dismiss arguing that plaintiff had not filed a charge of discrimination. Id. The court denied defendant's motion, finding that plaintiff had filed a charge. Id. at 78. Specifically, the court explained that despite that fact that the January 10, 1979 EEOC Form 283 was "neither signed nor sworn" the form had "described the alleged discriminatory conduct in *enough detail to enable [the EEOC] to issue an official notice of charge to*" plaintiff's employer. Id. (emphasis added). The court stated that the fact that the EEOC had "considered the circumstances surrounding the receipt of [plaintiff's] complaint *sufficient to initiate the administrative process*, is relevant." Id. Furthermore, the court noted that because plaintiff was "unschooled in the law and without aid of counsel," it was not unreasonable that she took "no further action during the limitation period in the belief that she had done that which was required of her." Id. at 79. (emphasis added).

In the instant case, the Intake Questionnaire in question was not filed by a plaintiff unschooled in the law like the plaintiff in Price. Rather, it was filed by an attorney who arguably should not be afforded the same leniency as a pro se plaintiff. Furthermore, upon receiving the July 11, 2012 Intake

16

Questionnaire, unlike the EEOC in <u>Price</u>, the EEOC in this case did not immediately send a Notice of Charge to Plaintiff's employer. Rather, on July 17, 2012 the EEOC actually sent a letter to Plaintiff explaining that her Intake Questionnaire was insufficient and that the EEOC needed additional information in order to take action. Thus, the Intake Questionnaire did not "describe the alleged discriminatory conduct in enough detail to enable the EEOC to issue an official notice of charge to" Plaintiff's employer, nor did it initiate the administrative process. Moreover, the letter mailed to Plaintiff specifically informed Plaintiff that if she did not respond within thirty days (which she did not) the EEOC would assume that she *did not want to file a charge*. This language makes it plainly clear that as of July 17, 2012, the EEOC did not consider that Plaintiff had filed a charge of discrimination. Likewise, Plaintiff's failure to respond to the EEOC's letter further confirms that as of August 16, 2012, as per the EEOC's letter, no charge had been filed. As such, the Court finds that <u>Price</u> is distinguishable from the instant case and does not support Plaintiff's argument that the Intake Questionnaire constituted an EEOC charge.

In addition to the court's reasoning in <u>Price</u>, the Court also finds a subsequent Fifth Circuit case helpful in guiding its

analysis. In <u>Harris v. Honda</u>, 213 Fed. App'x 258 (5th Cir. 2006),[12] the Fifth Circuit declined to find that a plaintiff's intake questionnaire constituted a charge of discrimination. <u>Id.</u> at 262. Specifically, the court noted that the key difference between an initial questionnaire and a charge of discrimination is the notification requirement. <u>Id.</u> (citing <u>Early v. Bankers Life & Cas. Co.</u>, 95 F.2d 75, 79 (7th Cir. 1992). The court explained that the employer is only notified once a charge has been filed with the EEOC, not when an initial intake questionnaire is completed. <u>Id.</u> Thus, the court reasoned that "without more" allowing a questionnaire to serve as a charge would "be equivalent of dispensing with the requirement to notify the perspective defendant." <u>Id.</u> The <u>Harris</u> court then noted that while it had allowed an intake questionnaire to serve as a charge in <u>Price</u>, "the defendant [in that case] . . . was on notice of all of the plaintiff's allegations." <u>Id.</u> In particular, the court explained that in <u>Price</u>, the EEOC had commenced its investigation and notified the defendant of the nature of the charges upon completing the initial intake. <u>Id.</u> Thus, the court determined that where the defendant was not put on notice of the charges

---

[12] <u>Harris</u> is an unpublished Fifth Circuit case. While the Court recognizes that its unpublished status means that it has no precedential significance, the Court nevertheless finds that the case is highly persuasive as it clearly interprets <u>Price</u> and explains the reasoning behind that case.

after the intake questionnaire was completed, the questionnaire could not constitute a charge. Id.

In the instant case, as this Court has explained, Plaintiff's Intake Questionnaire was not sufficient to lead the EEOC to send a Notice of Charges to Defendant. Rather, the EEOC only informed Defendant that anything had been filed with it on October 1, 2012, well after the 300 day deadline, and only at Plaintiff's counsel's prompting. At most, all the Court can find was that as of October 1, 2012, when the EEOC received Plaintiff's counsel's fax, it was put on notice for the first time that Plaintiff intended to file a charge of discrimination. October 1, 2012 is well after the 300 day deadline and, therefore, the charge was untimely. Furthermore, the Notice of Discrimination that was sent to Defendant did not include any specified allegations like the Notice of Charges in Price. While the Court recognizes that it should not penalize Plaintiff for the EEOC's failure to include allegations, it also finds the omission of allegations telling within the context of this case. The EEOC had already explained to Plaintiff that the information provided on the Intake Questionnaire was insufficient. Thus, it follows that the EEOC did not have sufficient information about the allegations to include in the Notice and pass on to

Defendants, hence, the EEOC's statement that it would send a perfected charge to Defendant when it was filed. Lastly, although Plaintiff has argued that her counsel's June 7, 2012, letter was sufficient to put Defendant on notice, the Court notes that while the letter did inform Defendant that Plaintiff believed some sort of sexual harassment had taken place, it did not provide any conclusive indication that Plaintiff *would* take legal action based on those allegations.[13] Thus, the Court finds that Plaintiff did not timely file a charge of discrimination and, as such, she has failed to exhaust her administrative remedies.

### C.   Prescription of State Law Claims

Louisiana Revised Statute § 23:332 "is subject to a prescriptive period of one year." La. Rev. Stat. § 23:303(d). This period "shall be suspended during the pendency of any administrative review or investigation of the claim." Id. "No suspension . . . shall last longer than six months." Id.

Plaintiff was terminated on September 26, 2011. Therefore, Plaintiff's cause of action accrued on September 26, 2012. Plaintiff filed suit in this Court on December 12, 2012, with her

---

[13] While Plaintiff's letter threatened litigation, it did not state that it would definitely sue and/or contact the EEOC. A Notice of Charge not only provides an employer with an account of the substantive nature of the accusations, but it also informs the employer that if they do not take action litigation will surely follow. Plaintiff's counsel's letter just stated that Plaintiff would like to avoid litigation.

state law claims following on April 18, 2013. At most, Plaintiff can claim thirty-seven day suspension period of prescription extending from July 11, 2012 until August 16, 2012. These dates represent the date that Plaintiff filed her Intake Questionnaire and the last day of the thirty-day period that Plaintiff had to update the EEOC on the status of her "charge." As of August 16, 2012, as the EEOC had clearly informed Plaintiff, the EEOC assumed that Plaintiff did not want to file a charge. Thus, on August 17,  2012, the clock began running again on Plaintiff's state law claims, and she was given until November 2, 2012 to file suit. Plaintiff's suit was filed on December 12, 2012, approximately one month and ten days after the clock had run out. Accordingly, this Court finds that Plaintiff's state law claims are prescribed and, therefore, should be dismissed. For the foregoing reasons,

**IT IS ORDERED** that Defendant's motions are **GRANTED.**

**IT IS FURTHER ORDERED** that all of Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this 31st day of May, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE